## NATIONAL LABOR RELATIONS BOARD v. KENTUCKY UTILITIES CO.

No. 10882.

United States Court of Appeals
Sixth Circuit.

June 7, 1950.

 

Helen F. Humphrey, New York City, David P. Findling, A. Norman Somers, and Fannie M. Boyls, all of Washington, D. C., on brief, for petitioner.

John L. Davis, Lexington, Ky., William H. Townsend, and John L. Davis, Lexington, Ky., on brief, for respondent.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The Petitioner, National Labor Relations Board, seeks enforcement of its order of March 22, 1948 against the Respondent, The Kentucky Utilities Company, following proceedings under § 10 of the National Labor Relations Act. 29 U.S.C.A. § 160.

The respondent, a Kentucky corporation is engaged in the production and distribution of electrical energy which it supplies to numerous corporations engaged in interstate commerce. Its operations, which cover the entire State of Kentucky, are divided into four operating divisions. The present proceedings are concerned only with its Central and Western Divisions.

The International Brotherhood of Electrical Workers, hereinafter referred to as I. B. E. W., and its Local Unions B-915 and B-816, affiliated with the American Federation of Labor, are labor organizations admitting to membership employees of the respondent. On May 19, 1943, I. B. E. W. was certified by the Board as the statutory representative of the employees in the Central Division. Local B-915 was a newly established local for the employees in that division. On February 4, 1946, the Board certified I. B. E. W. as the representative for the employees in the Western Division. Local B-816 of Paducah, Ky. was designated to conduct bargaining negotiations on behalf of the employees in the Western Division.

On July 1, 1945, following a Board order directing the respondent to bargain with Local B-915 for employees in its Central Division, the respondent and Local B-915 signed a collective bargaining contract for a one-year term. Thereafter the grievance committee of Local B-915 sought unsuccessfully to settle a number of grievances

with respondent. On July 24, 1945, at the request of the grievance committee, Ira Braswell, International Representative of the I. B. E. W., together with the local's grievance committee, called on the manager of the Central Division to request the negotiation of a grievance procedure. The manager refused to see Braswell. The respondent concedes that it refused to negotiate grievances with Braswell, but seeks to justify its action on the grounds that (1) Braswell had disqualified himself as a bargaining agent by his previously expressed hostility to the respondent and by giving testimony in a prior unfair labor practice proceeding which was discredited, (2) the Union had agreed with the respondent that Braswell would not be used in any negotiations with the respondent, and (3) there was no evidence that Braswell was selected by the members of Local B-915 as their representative. The Board held that the respondent by such action interfered with its employees in the exercise of the rights guaranteed by § 7 of the Act, 29 U.S.C.A. § 157.

On or about February 28, 1946, the respondent refused to bargain with Local B-816, on the ground that Local B-816 was not composed exclusively of employees of the respondent. The Board held that such action interfered with its employees in the exercise of the rights guaranteed in § 7 of the Act.

On or about July 1, 1946, by means of Policy Letter No. 3, the respondent unilaterally established new wage and working conditions for the employees in all its divisions. The Board held that such conduct violated § 8(a) (1) and (5) of the Act, 29 U.S.C.A. § 158(a) (1, 5).

The Board further held that by the activities of supervisors Thurman and Dempsey in connection with the circulation of an anti-Braswell petition, the respondent violated § 8(a) (1) of the Act.

By its order, enforcement of which is now sought, the Board directed the respondent to cease and desist from refusing to bargain collectively with Locals B-915 and B-816 and to take the following affirmative action: (1) Upon request to bargain collectively with Local Union B-915 through its accredited representatives, including Ira Braswell, as the exclusive representative of all employees in the Central Division unit; (2) to bargain collectively with Local B-816 as the exclusive representative of all employees in the Western Division unit; and (3) post appropriate notices at each of its properties within the Central and Western Divisions.

Respondent indicated its willingness to bargain with Local Union B-915 through representatives other than Ira Braswell, and contends that it committed no unfair labor practice in the Central Division in that it was under no duty, in view of all existing circumstances, to bargain with Ira Braswell, who by his previous activities had disqualified himself from serving as the Union's bargaining representative. Braswell was a discharged employee of the respondent who had been ordered reinstated with back pay by the Board in a prior unfair labor practice proceeding. He had, however, obtained employment as an international representative of the International Brotherhood of Electrical Workers, AFL, and declined the offer of reinstatement. Braswell had made speeches at various meetings of the I. B. E. W. in the Central Division expressing hostility to the respondent. As found by the trial examiner, "He told them that he had a grudge to settle with the respondent; that some of the respondent's officials were liars; that the respondent did not give a damn for the welfare of its employees and that he hoped the respondent might go broke financially, thus forcing it to sell out to The Tennessee Valley Authority." The Board had also held in a former case that certain testimony given by Braswell was "overstated" "exaggerated" and contrary to truth.

■ Section 7 of the Act provides—"Employees shall have the right * * * to bargain collectively through representatives of their own choosing, * * *." We agree with the Board's conclusion that the employer has no voice in the selection of such a representative. N.L.R.B. v.

Louisville Refining Co., 6 Cir., 102 F.2d 678, 681; N.L.R.B. v. New Era Die Co., 3 Cir., 118 F.2d 500, 504; In N.L.R.B. v. Jones and Laughlin, 301 U.S. 1, 45, the Court said page 33, 57 S.Ct. 615, 622, 81 L.Ed. 893, 108 A.L.R. 1352,—"Employees have as clear a right to organize and select their representatives for lawful purposes as the respondent has to organize its business and select its own officers and agents." In N.L.R.B. v. Sunbeam Electric Manufacturing Co., 7 Cir., 133 F.2d 856, at 860, the Court said—"Who is to represent the employees as bargaining agent and the manner of selection are matters which belong exclusively to the employees. The statute has made it so, and it is the duty of the employer to keep hands off and maintain a strictly neutral attitude." See also N.L.R.B. v. Blanton Company, 8 Cir., 121 F.2d 564, at page 571; Great Southern Trucking Co. v. N.L.R.B., 4 Cir., 127 F.2d 180, 185; Madden v. International Union U. M. W. A., D.C.D.C., 79 F.Supp. 616.

■ But the question here involved is not the right of the employees to select Local B-915 as their bargaining agent, but whether there was a refusal to bargain collectively with Local B-915 after it had been so selected. Section 7 of the Act refers to the right "to bargain collectively" as well as to the right to have representatives of their own choosing. The correlative duty on the part of the employer to bargain collectively with the representatives of the employees is not an unqualified duty to meet and talk whenever the Union seeks such a conference regardless of existing conditions. In Timken Roller Bearing Co. v. N.L.R.B., 6 Cir., 161 F.2d 949, 953, this Court rejected a union contention that the duty to bargain collectively required an employer to "bargain and again bargain and yet again bargain" without regard to existing conditions. In N.L.R.B. v. Sands Mfg. Co., 306 U.S. 332, 59 S.Ct. 508, 83 L.Ed. 682, affirming the ruling of this Court in 6 Cir., 96 F.2d 721, the Supreme Court held the employer justified in abandoning further negotiations with the Union when conditions showed the uselessness of continuing with them. See also Boeing Airplane Co. v. N.L.R.B., D.C.Cir., 174 F.2d 988, 991.

■ The question is thus presented whether the respondent refused to bargain collectively, as that term has been judicially construed, when it indicated its willingness to negotiate with Local B-915 as the representative of the employees but not with Braswell as one of its negotiators The duty to bargain collectively presupposes negotiations between the parties carried on in good faith, with a common willingness among the parties to discuss freely and fully their respective claims and demands and, when they are opposed, justify them on reason. Rapid Roller Co. v. N.L.R.B., 7 Cir., 126 F.2d 452, 459. It contemplates a meeting between the contracting parties with open minds and a sincere desire to reach an agreement in a spirit of cooperation. N.L.R.B. v. Reed & Prince Mfg. Co., 1 Cir., 118 F.2d 874, 885. Although it does not compel the making of any agreement between employer and employees, N.L.R.B. v. Jones and Laughlin, 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352, it contemplates the making of contracts satisfactory to both employer and employees. Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 236, 59 S.Ct. 206, 83 L.Ed. 126; Wilson & Co. v. N.L.R.B., 8 Cir., 115 F.2d 759, 763. Collective bargaining is a two-sided proposition; it does not exist unless *both* parties enter the negotiations in a good faith effort to reach a satisfactory agreement. Mere lip service to the obligation on the part of the employer has been condemned often by the Courts. See N.L.R.B. v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632. With Braswell acting as one of the negotiators for the Union, any meeting with the negotiators would not have fulfilled the requirements of collective bargaining. His expressed hostility to the respondent and his purpose to destroy the respondent financially made any attempt at good faith collective bargaining a futility. Just as collective bargaining in form only and lacking in substance has been condemned, certainly collective bargaining in form only without good faith negotiating on the other side should not be required.

In view of the facts that Braswell was not personally chosen by the employees to represent them, that the respondent at all times was willing to bargain collectively with the Union if Braswell only was eliminated as a negotiator, that on two previous occasions Braswell had been withdrawn as a negotiator at the request of the respondent, and that the Union representatives agreed orally, though refusing to put it in writing, that Braswell was not a proper person to represent the employees and would not be called upon to conduct any negotiations on behalf of the Union, we are of the opinion that so far as this aspect of the case is concerned, the action of the respondent was not an unfair labor practice. Timken Roller Bearing Co. v. N.L.R.B., supra; N.L.R.B. v. Lightner Pub. Corp., 7 Cir., 113 F. 2d 621, 625.

We are of the opinion that respondent was not justified in refusing to bargain with Local B-816 because it was not composed of members who were employed by respondent. Its membership came from various employments, including some Tennessee Valley Authority employees, the organization which Braswell had hoped would take over respondent's business. But the Act does not require that the bargaining representative be a union composed exclusively of the employees of a particular company. As stated above, the Act gives the employees the right to have a bargaining representative "of their own choosing." For the reasons hereinabove given, the employer has no right to control or object to their selection. Pueblo Gas & Fuel Co. v. N.L.R.B., 10 Cir., 118 F.2d 305.

Respondent's brief does not discuss the other provisions of the Board's Order, and, accordingly, we consider them as not at issue in this Court. Kahn v. United States, 6 Cir., 20 F.2d 782; Grand Trunk Western R. Co. v. H. W. Nelson Co., 6 Cir., 116 F.2d 823, 830.

The order of the Board is modified by striking therefrom paragraphs 1(a) and 2 (a) and by changing the notice to be posted as required by paragraph 2(c) to conform thereto, and as so modified enforcement thereof is decreed.