## NATIONAL LABOR RELATIONS BOARD
### v.
### ROSCOE SKIPPER, Inc.
### No. 14885.

United States Court of Appeals,
Fifth Circuit.

June 18, 1954.

A. Norman Somers, Asst. Gen. Counsel, N. L. R. B., David P. Findling, Asso. Gen. Counsel, N. L. R. B., Rose Mary Filipowicz, Atty., N. L. R. B., George J. Bott, General Counsel, Owsley Vose, John C. Rohrbaugh, Attys., N. L. R. B., Washington, D. C., for petitioner.

E. Kontz Bennett, Waycross, Ga. (Bennett, Pedrick & Bennett, Waycross, Ga., of counsel), for respondent.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and DAWKINS, District Judge.

HUTCHESON, Chief Judge.

This small tempest in a smaller teapot, this pitifully picayune controversy, this minuscular dispute between Labor and Management, which in and by this solemn and legalistic proceeding has been blown up to the proportions of a mimic war, is a sad commentary on human pridefulness and temper.

It is a sadder commentary on the deficiencies and inadequacies in law and in fact in the Labor-Management field of human relations, that it is permitted, indeed required, that to settle this silly, this completely unworthy little back door quarrel, the ponderous machinery first of the Labor Board and then of this court must be called into play, in short, an elephant gun must be used to rout a flea.

For, while in form the order, enforcement of which is sought, is the usual one requiring the respondent, to cease and desist from refusing, and upon request, to bargain collectively with the union selected by the employees as their representative, in fact the order deals simply with, it provides a remedy for the stubbornly asserted claim of respondent that one Phillips was not, and the equally stubborn claim of the union that he was, entitled to sit on the union's side of the bargaining table.[1] It is this and only this which resulted in the breakdown of bargaining relations and the long drawn out controversy which, beginning in October, 1952, has engaged the attention and required the action in turn of, the General Counsel, the Examiner, the Labor Board, and now this Court. Board and Respondent see alike the question

1. To Phillips' credit as no torchbearer with a chip on his shoulder but a reasonable human being with an eye single to the purpose at hand, it must be

said that he "offered to leave the meeting so that negotiations could continue", but the union refused to accede to this.

for our decision, the meat in the nut we are to crack.[2]

In support of its position that "Employees have as clear a right to organize and select their representatives for lawful purposes as the respondent has to organize its business and select its own officers", the Board cites N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 622, 81 L.Ed. 893, and many other cases. Such citation of cases, however, is a work of supererogation. To select one's own representative or agent is a natural right and the statute accords it in express terms. For the employer, in the absence of exceptional circumstances which do not appear here, to have a right of choice either affirmatively or negatively as to any of those who are to sit on the opposite side of the table from him would defeat and nullify the law. Brotherhood of Ry. and S. S. Clerks v. Texas & N. O. R. Co., D.C., 24 F.2d 426.

This is not, of course, to say that there may not be circumstances, such as were found to exist in N.L.R.B. v. Kentucky Utilities Co., 6 Cir., 182 F.2d 810, 811, where the negotiator "had expressed hostility toward employer" and the "union representative had agreed orally that representative was not a proper person to represent employees and would not be called on to conduct any negotiations", under which a refusal to bargain would not be an unfair labor practice. But see N.L.R.B. v. Deena Artware, Inc., 6 Cir.,

198 F.2d 645. Nothing of that kind or in any way comparable to it is shown or suggested here.[3]

*The Board's order is supported by evidence and will be Enforced.*[4]

2. The Board's brief states it this way: "Whether the Board properly found that respondent's action in refusing to bargain collectively with the union as long as George Phillips was a member of the union negotiating committee was violative of the act."

   The respondents states it thus: "It is admitted that there is a single question of law and a very narrow one presented in this case. Did the Board commit error in finding that the respondent was guilty of an unfair labor practice * * * by refusing to negotiate with the union with George Phillips as a member of the committee?"

3. This is so whether the respondent's real reason was that stated by it, that Phillips might give information to its

competitors, or was antipathy to him because of his participation in an unsuccessful effort to organize its truck drivers.

4. Nevertheless, conceding that both respondent and union acted in good faith, that is with a sincere belief in the abstract rightness of his stand, we think it is greatly to be regretted that, instead of taking the adamantine position both took, a soft answer was not tried or some method of conciliation resorted to, so that it would not be necessary to resort to the slow and creaking procedure which, like a wounded snake, has dragged its slow length along, sans bargaining, sans labor peace, sans everything but pride of opinion, ill temper and frustration.