**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DETECTIVE INTELLIGENCE SERVICE, INC., Respondent.**

**No. 26571.**

United States Court of Appeals, Ninth Circuit.

Aug. 24, 1971.

Daniel M. Katz (argued), Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., Roy O. Hoffman, Director, NLRB, San Francisco, Cal., for appellant.

Boyd Burnison (argued), of St. Sure, Moore, Hoyt & Sizoo, Oakland, Cal., for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and BYRNE, District Judge.*

HAMLEY, Circuit Judge:

The National Labor Relations Board (Board) applies to this court pursuant to section 10(e) of the National Labor Relations Act (Act), as amended, 29 U.S.C. § 160(e), for enforcement of its order issued against Detective Intelligence Service, Inc. (Employer). The Board ordered the Employer to cease and desist from violating section 8(a) (5) and (1) of the Act, 29 U.S.C. § 158(a) (5), (1), to bargain with the certified representative of certain employees, and to post appropriate notices. The Employer defends its refusal to bargain on the ground that the certification, as clarified by the Board, is invalid.

The background of this dispute extends to July 9, 1968, when the International Union of Guards and Watchmen, Independent (Union), filed a petition with the Board for certification as the

---

* The Honorable William M. Byrne, Senior United States District Judge for the Central District of California, sitting by designation.

bargaining representative for "[a]ll employees employed by the employer as guards, watchmen, Patrolmen, Fire Patrol and/or Special Police." On July 19, 1968, the Union and Employer entered into a Stipulation for Certification upon Consent Election which included a paragraph defining the scope of the collective bargaining unit as follows:

"All security officer employees of the Employer working out of its Oakland, California location, including regular part-time employees; excluding office clerical employees, salesmen, part-time employees who have not worked in the calendar quarter ended June 30, 1968, and supervisors as defined in the Act."

The stipulation also included the standard provision defining those eligible to vote in the election based upon the payroll period of July 13, 1968. The stipulation was signed by the Regional Director of the Board.

The Union won the election by a vote of fifty-four to thirty-three. There were one hundred and twenty-four eligible voters. The Regional Director certified the Union as representative on August 28, 1968, describing the bargaining unit precisely as it had been described in the stipulation.

On February 7, 1969, the Union filed a petition with the Board requesting a clarification of the unit description set forth in the certification. The Union proposed that the unit description be clarified to read:

"All security officer employees of the Employer working out of its Oakland, California location, excluding office clerical employees, salesmen, and supervisors as defined by the Act."

A hearing was held on the petition on February 26, 1969, and the case was ordered transferred to the Board on March 12, 1969. The Union contended that the description was ambiguous and should be clarified to clearly include all regular part-time employees. The Employer, opposing the petition, argued that the description unambiguously excluded part-time employees hired since the specified quarter.

The Board found that the portion of the unit description excluding part-time employees who had not worked in the calendar quarter ended June 30, 1968, had been intended by the parties as the formula by which the eligibility of part-time employees to vote in the election was to have been determined, and that it was mistakenly included in the unit description.

The Board affirmed the rulings of the Hearing Officer and issued an order on June 26, 1969, clarifying the unit description as follows:

"All security officer employees of the Employer working out of its Oakland, California location including regular part-time employees, excluding office clerical employees, salesmen and supervisors as defined in the Act."

The Union requested the Employer to bargain with it as representative of the unit as clarified, and filed a charge with the Board when the Employer refused. A complaint issued from the Board charging a refusal to bargain in violation of the Act. The Employer's answer asserted that it had bargained "with respect to all employees * * * except for part-time employees who have not worked in the calendar quarter ended June 30, 1968."

The Board transferred the cause to itself and gave notice to show cause why the General Counsel's motion for summary judgment should not be granted. The Employer's response contended that the original unit description was unambiguous, was not the result of inadvertent error and that the Board had no power to modify a bargaining unit stipulated by the Employer and Union and approved by the Regional Director.

The Board granted the motion for summary judgment on the ground that the issues were identical to those decided by the Board in the representation proceeding and that the Employer was not entitled to relitigate them, in the absence of special circumstances. The Board found, on the basis of the record, that the Employer's refusal to bargain violated section 8(a) (5) and (1) of the

Act, 29 U.S.C. § 158(a) (5), (1), issued the above-described order and applies for its enforcement.

The parties agree that the only question in this case is the propriety of the clarification decision. If the Board acted properly in eliminating the disputed language from the unit description, its order should be enforced, there being no other dispute as to the underlying facts.

The Board contends that there was no abuse of discretion in its clarification action. While conceding that the Board has wide discretion to independently establish the scope of a bargaining unit, the Employer urges that once the Union and Employer have, by stipulation, defined and described that unit, and it has been approved by the Regional Director, the Board is without power to modify the unit description.

■■ It is true that the considerations applicable when the Board itself determines a bargaining unit may not be the same as those that control when it interprets a stipulation for a consent election. In the latter circumstances the primary question is the intent of the parties. NLRB v. J. J. Collins' Sons, Inc., 332 F.2d 523, 525 (7th Cir.1964); NLRB v. Joclin Manufacturing Co., 314 F.2d 627, 633–634 (2d Cir.1963). For instance, community of interest of employees is a significant doctrine when the Board is drawing an appropriate unit, but it has been considered insufficient to override the intent of the parties when the parties fix the unit in a stipulation. NLRB v. Midwest Television Inc., Station WMBD-AM-FM-TV, 370 F.2d 287, 289 (7th Cir.1966); Tidewater Oil Co. v. NLRB, 358 F.2d 363, 366 (2d Cir.1966).

■ However, where a stipulation is ambiguous, the Board has authority to interpret the agreement according to what it finds to have been the intent of the parties. NLRB v. Joclin Manufacturing Co., 314 F.2d 627, 634 (2d Cir. 1963). Likewise, where the inclusion or exclusion of employees within the stipulated unit could violate some settled Board policy or statutory provision the Board may take account of such policy or statute. Tidewater Oil Co. v. NLRB, 358 F.2d 363, 366 (2d Cir.1966); NLRB v. Joclin Manufacturing Co., 314 F.2d 627, 634–635 (2d Cir.1963). The Board may also resort to the community of interest doctrine to aid its resolution of ambiguity in a stipulation. NLRB v. Midwest Television, Inc., Station WMBD-AM-FM-TV, 370 F.2d 287, 289 (7th Cir.1966).

In its clarification decision, the Board found that the original unit description contained "inconsistencies leading to an absurd result" and that it could not "reasonably be regarded as reflecting the parties' intention." The original stipulation had specifically included the Employer's regular part-time employees within the unit. Due to the rate of turnover, disclosed at the clarification hearing, the Employer's work force was becoming increasingly composed of part-time employees hired since June 30, 1968. The disputed language thus assured that part-time employees, the bulk of the unit deemed appropriate by the parties at the time of the election, would be eliminated from the unit, substantially altering the nature of the unit as time went on.

■ The Board found that the disputed language articulated a traditional formula for determining the eligibility of part-time employees to vote in a representation election, and had been inadvertently included in the unit description portion of the stipulation and later certification. Having determined the agreement as written included a mistake, the Board corrected it to conform with what it concluded was the intention of the parties. We are not convinced that such correction went beyond the Board's authority to police its own certifications.

■ Although the Board did not specifically find an ambiguity in the language of the description, the internal inconsistencies of the language placed the Board in a position not unlike that it must assume when interpreting an

ambiguous stipulation. The evidence presented at the clarification hearing, which consisted directly of each side's protestations of what it had believed at the time, and the language of the stipulation itself were inconclusive to determine the parties' intention. In such circumstances, when dealing with an ambiguous stipulation, the Board is entitled to employ a *de novo* approach in considering the appropriateness of including the disputed employees within the unit, an approach which includes consideration of the factor of community of interest. *See* International Union of Elec. R. & M. Wkrs. v. NLRB, 135 U.S.App.D.C. 355, 418 F.2d 1191, 1201 (1969). We do not believe that consideration of the work interests and job functions, brought out at the clarification hearing, along with consideration of other facts and inferences, was improper in the case before us.

We conclude that the Board's action in the clarification proceeding was within its authority, and that its determination as to the intent of the parties is a reasonable one on the whole record.

Enforcement of the Board's order is granted.